1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| SUMMER SANCHEZ, an individual, ) | CV F 06-0152 AWI DLB |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANTS'** |
| ) | **MOTION FOR RECONSIDERATION** |
| v. ) | |
| ) | **ORDER GRANTING SUMMARY** |
| CORRECTIONS CORPORATION OF ) | **JUDGMENT** |
| AMERICA, a Maryland Corporation; ) | |
| and DOES 1 through 100, inclusive, ) | (Document #33) |
| ) | |
| Defendants. ) | |
| _____ ) | |

11
12
13
14
15
16
17
18

**BACKGROUND**

19     On December 22, 2005, Plaintiff Summer Sanchez ("Plaintiff") filed her complaint in the

20  Kern County Superior Court.  The complaint alleges that Defendant Corrections Corporation of

21  America ("Defendant") discriminated against Plaintiff based on her national origin, race, and/or

22  ancestry in violation of FEHA, wrongfully terminated Plaintiff because of her national origin,

23  race, and/or ancestry in violation of FEHA, and terminated Plaintiff in violation of California's

24  public policy.  On February 10, 2006, Defendant removed this action to this court because the

25  parties are citizens of different states and over $75,000.00 is in controversy.

26     On September 8, 2006, Defendant filed a motion for summary judgment.   On December

27  6, 2006, the court denied Defendant's motion for summary judgment.   The court found that there

28  was a disputed issue of material fact on whether Warden Charles Glikey ("Glikey")'s zero-

tolerance policy applied to sexually and racially offensive comments or applied only to racially offensive comments.   Because there was evidence that not all officers were treated the same if both sexually and racially offensive comments were included in the zero-tolerance policy, the court found a disputed issue of fact on pretext and declined to grant summary judgment to Defendant.

On December 8, 2006, the court held a pretrial conference.   On December 18, 2006, after the court had allowed the parties time to submit additional potential witnesses and evidence to the court, the court issued its pretrial order.   In the pretrial order, the court set trial in this matter for January 17, 2007.

On December 22, 2006, Defendant filed an ex parte application for an order continuing the trial date and to reopen the time for Defendant to file a motion for reconsideration of the court's order denying summary judgment.   On January 4, 2007, the court granted Defendant's motion.  The court vacated the January 17, 2007 trial date, and the court ordered Defendant to file any motion for reconsideration of the court's December 6, 2006 order denying summary judgment by January 19, 2007.

On January 19, 2007, Defendant filed a motion for reconsideration.   Defendant contends that on December 12, 2006, after the court denied Defendant's motion for summary judgment, Defendant's attorney was informed by Plaintiff's attorney of newly discovered evidence in the form of minutes from Warden Glikey's September 28, 2004 recall meeting ("Minutes"), at which time the zero-tolerance policy was announced.   Defendant then deposed Plaintiff regarding the Minutes.   Defendant contends that the newly discovered Minutes and Plaintiff's second deposition confirm that the zero-tolerance policy at issue concerned only sexual harassment and racial slurs.   Defendant argues that this evidence differs from Plaintiff's evidence, on which the court relied when denying summary judgment, that the zero-tolerance policy included all sexually harassing comments and racial slurs.

On February 8, 2007, Plaintiff filed a late opposition.   Plaintiff contends a motion for

2

1   reconsideration is not appropriate because the Minutes are not newly discovered evidence.

2   Plaintiff argues that Defendant should have been in possession of its own Minutes.   Plaintiff also

3   contends that Defendant has been changing its alleged zero-tolerance policy, and Defendant's

4   changing position is evidence that Plaintiff was fired because of her race and not for a violation

5   of the zero-tolerance policy.

6       Apparently having received a copy of Plaintiff's opposition earlier, on February 5, 2007,

7   Defendant filed a reply.

8                                   **LEGAL STANDARD**

9       The court has discretion to reconsider and vacate a prior order.  <u>Barber v. Hawaii</u>, 42 F.3d

10  1185, 1198 (9th Cir.1994); <u>United States v. Nutri-cology, Inc.</u>, 982 F.2d 394, 396 (9th Cir.1992).

11  "A party seeking reconsideration must show more than a disagreement with the Court's decision,

12  and recapitulation of the cases and arguments considered by the court before rendering its

13  original decision fails to carry the moving party's burden."  <u>U.S. v. Westlands Water Dist.</u>, 134

14  F.Supp.2d 1111, 1131 (E.D. Cal. 2001).  Motions to reconsider are committed to the discretion

15  of the trial court.  <u>Combs v. Nick Garin Trucking</u>, 825 F.2d 437, 441 (D.C.Cir. 1987); <u>Rodgers v.</u>

16  <u>Watt</u>, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).  To succeed, a party must set forth facts or law

17  of a strongly convincing nature to induce the court to reverse its prior decision.  <u>See</u>, <u>e.g.</u>,

18  <u>Kern-Tulare Water Dist. v. City of Bakersfield</u>, 634 F.Supp. 656, 665 (E.D.Cal. 1986), *aff'd in*

19  *part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).   When filing a motion for

20  reconsideration,  Local Rule 78-230(k) requires a party to show the "new or different facts or

21  circumstances claimed to exist which did not exist or were not shown upon such prior motion, or

22  what other grounds exist for the motion."

23                          **COURT'S FINDINGS IN PRIOR ORDER**

24      On the motion for summary judgment, the court found the following relevant facts were

25  undisputed:

26          Plaintiff was hired by Defendant Corrections Corporation of America
           ("CCA") as a Corrections Officer at its detention facility in California City,
27

28                                          3

California (the "California City facility") on or about July 12, 2002.

At all times during her employment at CCA, Plaintiff was an at-will employee pursuant to a written at-will agreement.

Plaintiff was terminated from her employment at CCA on October 22, 2004.

. . . .

The parties agree that after becoming warden of CAA's facility in California City in January 2003, Glikey adopted a zero-tolerance policy with respect to racial comments in the workplace.   Under the zero-tolerance policy, employees were informed that they would be terminated if they made racial comments in the workplace.   Plaintiff provides additional evidence that Glikey's zero-tolerance policy was with respect to all harassing and offensive comments in the workplace, including sexual comments.   See Sanchez Dec. ¶ 3.

Sanchez was aware that Warden Glikey had adopted a zero tolerance policy with respect to racial comments and that she could be terminated if she violated the policy.

On September 1, 2004, Plaintiff was accessing certain chemicals when Sergeant Yvette Garcia approached her and asked her to escort a prisoner. Plaintiff told Garcia that she had been ordered by her superior to attend to the chemicals before engaging in other duties.   Plaintiff admits that after Garcia persisted, Plaintiff responded: "I wish you would get off my ass, you're on me like a black on watermelon."   Plaintiff was upset with Garcia and was not joking when she made the comment.

At some time Plaintiff became aware that her comment would be offensive, in particular to African-Americans, because she had used the word "black."

. . . .

Plaintiff admits that a comment about someone's race was a violation of CCA policy.   At the time Plaintiff made her comment, she was aware that Warden Glikey had stated there was a zero-tolerance policy against racial comments.

On October 22, 2004, Plaintiff was terminated.   CCA stated the reason for the termination from CCA was because Plaintiff violated CCA's zero tolerance policy.   The parties dispute the real reason Plaintiff was terminated.

Only two racial comments have been reported to CCA that were made after Glikey issued his zero-tolerance policy – Comments by Reeve and Sanchez. In both cases, Glikey states in his declaration that he terminated the employees for violation of the zero-tolerance policy and he is solely responsible for making that decision.   The parties dispute what the zero-tolerance policy was and if a violation of the zero-tolerance policy was the real reason for Glikey's actions.

Officer Reeve is White.   At some time prior to Plaintiff's statement, Reeve said to Officer Spencer, an African-American employee, that Spencer "was being treated like a nigger child."   Reeve was terminated for violating the zero-tolerance of any racial comments policy sometime within a month to four months after she made the "nigger child" comment.     Plaintiff claims that prior to her termination, Reeve was reprimanded on four separate occasions for making racial comments.   Other than Reeve's hearsay statements to Plaintiff, there is no evidence regarding what the prior reprimands were for.   Regardless, Plaintiff admits all of the prior incidents involving Reeve occurred before the adoption of the zero-tolerance policy.

. . . .

Defendant suspended Burgess for making a sexual comment to another

4

female correctional officer that she had "DSL." When the female correctional officer asked what DSL stood for, Burgess replied "Dick Sucking Lips." Burgess was subsequently given a forty hour suspension. This incident occurred on July 12, 2004. <u>See</u> Glikey Dec. at ¶ 7. Glikey states that he made the decision to suspend Burgess for forty hours because "I did not consider the comment she made to be a racial comment. I was solely responsible for that decision." <u>Id</u>. . . . .

As discussed in more detail in the order denying summary judgment, in an employment discrimination case, a plaintiff opposing summary judgment carries the initial burden of establishing a prima facie case of employment discrimination. <u>McDonnell Douglas Corp</u>, 411 U.S. 792, 802 (1973); <u>Washington v. Garrett</u>, 10 F.3d 1421, 1432-33 (9th Cir. 1993). While the specific elements of a prima facie case vary depending on the particular facts, the parties agree that a plaintiff must provide evidence that (1) she was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal.4th 317, 355 (2000). If the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer, that the employer's actions were taken for a legitimate, nondiscriminatory reason. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>McDonnell Douglas Corp</u>., 411 U.S. at 802; <u>Guz</u>, 24 Cal.4th at 355-56. If the employer can do so, the plaintiff must then raise a genuine factual issue as to whether the employer's articulated reasons were pretexts for discrimination or offer any other evidence of discriminatory motive. <u>Garrett</u>, 10 F.3d at 1432-33; <u>Guz</u>, 24 Cal.4th at 356. If the plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate because it is for the trier of fact to decide which story is to be believed. <u>Garrett</u>, 10 F.3d at 1433.

At issue on the motion for summary judgment was whether Defendant had a legitimate, nondiscriminatory reason to terminate Plaintiff and whether Plaintiff had provided evidence to

1    rebut Defendant's nondiscriminatory reason for Plaintiff's termination.   In denying summary

2    judgment, the court made the following findings:

3            Defendant offers evidence that it fired Plaintiff for violating Glikey's zero-
         tolerance policy toward racial comments.   Defendant argues that Plaintiff has no
4        evidence that anyone else who made a racial comment after the zero-tolerance
         policy was in place and had their comment reported to CCA and/or Glikey was
5        not terminated.   In fact, all evidence indicates that the only other person who
         made a racial comment after the zero-tolerance policy was in effect – Reeve – was
6        also terminated.   Based on this evidence, Defendant has come forward with a
         legitimate non-discriminatory reason for Plaintiff's termination.
7            In her opposition, Plaintiff comes forward with several disputed issues of
         fact to show pretext . . . .
8

9    The court then rejected most of Plaintiff's attempts to show pretext.   The court found it was

10   irrelevant if Plaintiff had evidence that she did not realize her statement was a racial insult when

11   she made the comment and whether anyone was offended by her comment.   The court found that

12   there was no evidence that Glikey's zero-tolerance policy had no exceptions.   The court also

13   found that most of the other individuals discussed in the parties' briefs did not provide evidence

14   of pretext.   The court found that there was either no evidence that Defendant was aware of these

15   individuals' improper comments and/or no evidence that they were made after Glikey's zero-

16   tolerance policy was put into effect.

17       After discounting most of Plaintiff's arguments concerning pretext, the court found that a

18   trier of fact could use two pieces of evidence submitted by Plaintiff to find pretext.   The court

19   stated as follows:

20           While these disputed issues of fact are not material and do not show
         pretext, in her opposition, Plaintiff has come forward with two pieces of evidence
21       that, if true, could show pretext.   First, the court finds that Plaintiff has created a
         disputed issue of material fact on what Glikey's zero-tolerance policy was.  In his
22       declaration, Glikey states that after he began his tenure as Warden, he issued a
         zero-tolerance policy regarding any racial comment by a CCA employee.  See
23       Glikey Dec. ¶ 3.   In Paragraph 3 of Plaintiff's declaration, Plaintiff states that in
         a recall meeting, in front of a limited number of CCA employees, Glikey stated
24       that there would be a zero-tolerance policy with respect to all harassing and
         offensive comments in the workplace, including sexual comments.  See Sanchez
25       Dec. ¶ 3.  While Defendant objects to the rest of Paragraph 3 and much of the rest
         of Plaintiff's declaration, Defendant does not object to this sentence.   Because
26       this sentence appears to be based on Plaintiff's personal knowledge of what
         Glikey announced his policy would be, the court finds it admissible for the
27

28                                           6

purposes of this motion.   The court also does not find this statement directly conflicts with Plaintiff's deposition testimony.   In the portions of Plaintiff's deposition cited by the parties, Plaintiff was asked if she was aware that there was a zero-tolerance policy on racial comments in the workplace.   See Sanchez Depo. at 139 & 141.   The parties have not cited the court to portions of Plaintiff's deposition in which she was asked what Glikey's policy was and/or asked if it included sexually offensive comments.   Because Plaintiff did not testify at her deposition Glikey's zero-tolerance policy only included racial comments and never stated it did not include sexual comments, the court does not find Plaintiff's declaration inconsistent with her deposition testimony.   See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir.1991) (while a party cannot create an issue of fact by filing a declaration that contradicts prior deposition testimony, a declaration is only a sham if it flatly contradicts earlier testimony).   Thus, Plaintiff has created a disputed issue of fact on whether Glikey's zero-tolerance policy only applied to harassing racial comments or applied to both harassing racial and harassing sexual comments.

Taking Plaintiff's evidence as true, the inclusion of sexually offensive comments as part of Glikey's zero-tolerance policy provides Plaintiff with possible evidence of pretext.   The evidence before the court reveals that Burgess told another female correctional officer that she had "DSL", a sexually offensive comment.   The evidence reveals that this comment was made after Glikey issued the zero-tolerance policy.   The evidence also reveals that Burgess was suspended and not terminated for this comment.   If Burgess is included in the group of people who violated Glikey's zero-tolerance policy, Plaintiff has provided evidence that a white officer was treated differently than she was.

The issue thus becomes whether evidence that one white officer was treated differently than Plaintiff for violating Glikey's zero-tolerance policy is sufficient evidence to show a disputed issue of fact on pretext.   Given the size of the group of people who violated the zero-tolerance policy, the court finds Glikey's different treatment of Burgess is sufficient to show a disputed issue of fact on whether Defendant's stated reasons for terminating Plaintiff were pretext for a racial motive.   There is evidence that Defendant knew of only three people who violated the zero-tolerance policy.   The evidence before the court shows that Plaintiff, Reeve, and Burgess were the only ones who made harassing statements after Glikey announced the zero-tolerance policy and whose harassing statements reported to CCA and Glikey.   As such, only three people are in the relevant class.   Plaintiff was treated differently than 33.3% of the other officers who violated the zero-tolerance policy.   The officer who was treated differently was not Mexican, but White.   On this motion for summary judgment, the court finds Plaintiff has created a genuine factual issue of material fact as to whether Defendant's articulated reasons were pretext for discrimination.

In making this finding, the court does not find that Plaintiff has in fact shown Defendant's actions were discriminatory.   A trier of fact may well find that Glikey's zero-tolerance policy only included racially offensive statements, and was thus was applied consistently.   In addition, even if a trier of fact finds Glikey's zero-tolerance policy included sexually offensive statements, a trier of fact may find another explanation for the difference in treatment between Plaintiff and Burgess other than illegal discrimination.   However, at this time, the court finds that given the evidence of a disputed issue of fact over Glikey's exact policy and the fact there is evidence Burgess, a white employee, may have violated Glikey's policy and not been fired, the court cannot grant summary judgment for Defendant on Plaintiff's first six claims.

7

**DISCUSSION**

On the motion for summary judgment, the court found a disputed issue of fact on the confines of Glikey's zero-tolerance policy.   Defendant had provided evidence that the zero-tolerance policy applied to racial comments.   Plaintiff had provided additional evidence that Glikey's zero-tolerance policy was with respect to all harassing and offensive comments in the workplace, including sexual comments.  All parties have now modified their description of Glikey's zero-tolerance policy.   The parties now agree on Warden Glikey's stated zero-tolerance policy.   Glikey's second declaration and the Minutes state that the zero-tolerance policy applied to: "Sexual harassment", "Racial slurs, etc.", and "Providing false/untruthful statements."   <u>See</u> Glikey Dec. II at ¶ 4; Recall Minutes of 9/28/04.   In her December 19, 2006 deposition, Plaintiff agreed that this statement – zero-tolerance for the following: sexual harassment, racial slurs, etc., providing false/untruthful statements –  was also her understanding of the zero-tolerance policy. <u>See</u> Sanchez 12/19/06 Depo. at 218 & 221.   Plaintiff states that she did not have an understanding of the zero-tolerance policy different from this description.  <u>See id</u>. at 221-22. Thus, the undisputed facts now include as an undisputed fact that the zero-tolerance policy applied to "sexual harassment" and "racial slurs", along with providing false/untruthful statements.

The issue currently before the court is whether, based on the now undisputed fact that the zero-tolerance policy applied to "sexual harassment", rather than Plaintiff's previous evidence that the policy applied to "sexually harassing comments," there is still a disputed issue of fact on pretext.   The court previously found that Burgess' comment would meet the zero-tolerance policy if the policy included sexually harassing comments.   Because Burgess was not fired, the court found that evidence of Burgess's violation of the zero-tolerance could be evidence of pretext.  On this motion for reconsideration, Defendant contends that Burgess's statement did not constitute sexual harassment under the zero-tolerance policy.   Defendant then argues that if Burgess's statement did not violate the zero-tolerance policy, Plaintiff has not shown pretext.

**A.   Consideration of "Newly Discovered Evidence"**

Preliminarily, the court notes that Plaintiff contends in the opposition that the court should not consider the evidence about the confines of the zero-tolerance policy found in the Minutes and Plaintiff's second deposition because this evidence does not meet the standard for "newly discovered evidence".   Defendant apparently received a copy of the Minutes from Plaintiff's attorney on December 12, 2006.   Because the Minutes – defining the zero-tolerance policy in a way differently than both of the possibilities addressed by the court on summary judgement – were not considered by the court on summary judgment, Defendant contends both the Minutes and Plaintiff's deposition are newly discovered evidence.   Plaintiff contends this evidence does not meet the standard for newly discovered evidence.

Rule 59 concerns motions for a new trial   Under Rule 59, a new trial based on newly discovered evidence requires: (1) evidence discovered after trial, "(2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case."   Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 993 (9th Cir. 2001); Defenders of Wildlife v. Bernal, 204 F.3d 920, 928-29 (9th Cir. 2000).   Rule 60(b)(2) provides for relief from a judgment or order on the ground of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."   As with Rule 59 motions, Rule 60(b) requires that the newly discovered evidence not have been in the party's possession at the time of summary judgment or discoverable with reasonable diligence.   Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987).

Plaintiff contends that Defendant's evidence is not newly discovered because Defendant has not shown that the Minutes could not have been discovered earlier by Defendant with reasonable diligence.   The court must agree that it has a similar question as the one Plaintiff asks in her opposition  – Why would Defendant not have a copy of Minutes from its own meeting

9

1  until provided one by Plaintiff's attorney?   This question is not answered in Defendant's motion

2  or reply.   Instead, Defendant focuses on Defendant's diligence in requesting all discovery from

3  Plaintiff and Defendant's quick actions in bringing this evidence to the court's attention.

4  Defendant has never explained how Defendant could be diligent in researching **its own** records

5  regarding the zero-tolerance policy and not found a copy of the Minutes.   However, the court

6  does not find that this failure on the part of Defendant and/or Defendant's attorneys requires the

7  court to deny Defendant's motion on its face.

8         This motion is not being considered under the standards of Rule 59 or Rule 60.

9  Defendant is not seeking reconsideration of a final judgment, final order, or verdict.   Defendant

10  is seeking reconsideration of a motion for summary judgment that the court **denied**.   The court's

11  order was not a final order disposing of this case.   This motion for reconsideration does not fall

12  within either Rule 59 or Rule 60.   As discussed above, the court will address the pending

13  motion based on the court's inherent power and Local Rule 78-230(k).   Unlike Rule 59 or Rule

14  60, these standards do not automatically require Defendant to prove due diligence.   In addition,

15  under the unique facts of this case, the court finds Defendant's diligence, or lack there of,  not

16  particularly relevant to whether the motion for reconsideration should be considered.

17         Unlike most motions based on newly discovered evidence, Defendant is not attempting to

18  reverse the court's prior order based on new evidence that Plaintiff disputes.   To the contrary,

19  Plaintiff does not dispute the evidence found in the Minutes and has used this same evidence to

20  clarify her own position.   Based on the Minutes, the parties now all agree that the zero-tolerance

21  policy included sexual harassment, racial slurs, and providing false/untruthful statements.

22  Unlike the parties' positions on summary judgment, the zero-tolerance policy is now undisputed.

23   Thus, a trier of fact no longer needs to resolve what the zero-tolerance included.   All parties

24  agree the zero-tolerance policy applied to sexual harassment, racial slurs, and providing

25  false/untruthful statements.

26         The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

27

28                                              10

1    as to the facts before the court.   Zweig v. Hearst Corp., 521 F.2d 1129 (9th Cir. 1975).   Under

2    Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment where

3    the evidence produced by the parties permits only one conclusion.   Anderson v. Liberty Lobby,

4    Inc., 477 U.S. 242, 247 (1986).   Summary judgment is precluded if there exists a genuine

5    dispute over a fact that might affect the outcome of the suit under the governing law.   Anderson,

6    477 U.S. at 248.   "Summary judgment has, as one of its most important goals, the elimination of

7    waste of the time and resources of both litigants and the courts in cases where a trial would be a

8    useless formality."   Zweig, 521 F.2d at 1135-36; see also Northwest Motorcycle Ass'n v. U.S.

9    Dept. of Agriculture, 18 F.3d 1468, 1471 (9th Cir. 1994); Hoffman v. Tonnemacher, 2007 WL

10   214554, *2 (E.D.Cal. 2007).   With this guidance, the court finds no legal reason to refuse to

11   consider the new evidence.   All parties agree the new evidence edits the facts the court

12   previously found disputed.    Thus, the court will consider the Minutes on this motion for

13   reconsideration even assuming Defendant has not sufficiently shown that Defendant could not

14   have discovered this evidence earlier.

15   **B.  Evidence of Pretext**

16          The parties agree that the issue that was before the court on summary judgment and is

17   currently before the court on this motion for reconsideration is whether Plaintiff has evidence to

18   refute Defendant's legitimate reason to fire Plaintiff.    "Legitimate" reasons in this context are

19   reasons that are factually unrelated to prohibited bias, and therefore, if true, would preclude a

20   finding of discrimination.  Guz, 24 Cal.4th at 358.   This burden is a minimal one.   Board of

21   Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 & n.1 (1978).   Here, Defendant's

22   stated reason for firing Plaintiff is that she violated the zero-tolerance policy on making racial

23   slurs or statements.

24          Once the employer has articulated a legitimate, nondiscriminatory reason for termination,

25   the plaintiff must provide evidence that the legitimate reason offered by the defendant is false,

26   creating an inference that those reasons were merely a pretext for discrimination. Reeves v.

27

28                                          11

1  Sanderson Plumbing Products, Inc., 530 U.S. at 142; Guz; 24 Cal.4th at 356.  "Pretext" means

2  a dishonest explanation, "a lie rather than an oddity or error."  O'Regan v. Arbitration Forums,

3  Inc., 246 F.3d 975, 983 (7th Cir. 2001).   Once the employer's stated justification has been

4  eliminated, discrimination becomes the most likely alternative explanation because the employer

5  is in the best position to put forth the actual reason for its decision.  Reeves, 530 U.S. at 147

6  If the plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the

7  employer's stated motive, summary judgment is inappropriate because the trier of fact decides

8  which story is to be believed.  Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993).

9  ***1.   Whether the New Undisputed Evidence of the Zero-Tolerance Policy Still Shows a***

10  ***Disputed Issue of Fact on Whether Defendant's Stated Reason is Pretext***

11         The undisputed facts now show that the zero-tolerance policy applied to sexual

12  harassment.  As discussed in the court's order denying summary judgment, if Burgess's sexual

13  comment also violated the zero-tolerance policy, there is a disputed issue of fact on whether

14  Defendant treated everyone who violated the zero-tolerance policy the same.   This in turn

15  created a disputed issue of fact on pretext.   On this motion, the court must determine if, based on

16  the new undisputed fact that the zero-tolerance policy applied to sexual harassment, Burgess's

17  statement still violated the zero-tolerance policy.    There is limited evidence before the court on

18  what conduct constituted "sexual harassment" under the zero-tolerance policy.   The only specific

19  evidence defining "sexual harassment" is Glikey's second declaration in which he stated that

20  Burgess's statement did not constitute sexual harassment.

21         Unlike terms such as "sexually harassing statements", or "racial slurs", the term "sexual

22  harassment" has a very specific definition under the law.  Sexual harassment under both Federal

23  and California law requires: (1) sexual advances or other verbal or physical conduct of a sexual

24  nature; (2) conduct that was unwelcome; and (3) conduct that was "sufficiently severe or

25  pervasive to alter the conditions of the victim's employment and create an abusive working

26  environment."  See Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995); Ellison v.

27

Brady, 924 F.2d 872, 875-876 (9th Cir.1991); Fisher v. San Pedro Peninsula Hospital, 214

Cal.App.3d 590, 608 (1989).   In determining whether the offending conduct was sufficiently

severe or pervasive, the relevant factors include "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance."   Harris v. Forklift

Sys., Inc., 510 U.S. 17, 23 (1993) Harris, 510 U.S. at 23.  The showing of severity can be reduced

by the frequency of the conduct, and while a single incident may be sufficient, "generally

repeated incidents create a stronger claim of hostile environment, with the strength of the claim

depending on the number of incidents and the intensity of each incident."  Ellison, 924 F.2d at

877-78.

The parties' agree that Burgess's conduct concerned Burgess, a female correctional

officer, stating to another female correctional officer that she had "DSL".   When the other

officer asked what "DSL" stood for, Burgess replied "Dick Sucking Lips".   There is no other

evidence of other verbal or physical conduct of a sexual nature involving Burgess.   Assuming

Burgess's DSL comment was an unwelcome verbal statement of a sexual nature, under the legal

definition of "sexual harassment," the comment was neither sufficiently severe or pervasive to

alter the conditions of the other female's employment nor sufficient to create an abusive working

environment   The utterance of an epithet which engenders offensive feelings is not sufficient to

affect the conditions of employment necessary to show sexual harassment.  National R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002);  Harris v. Forklift Systems, Inc., 510 U.S.

17, 21 (1993); Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986); Kortan v. California

Youth Authority, 217 F.3d 1104, 1110 (9th Cir. 2000).   Thus, Burgess's statement clearly did not

met the legal definition of "sexual harassment".

To show that Burgess's statement met the definition of "sexual harassment" found in the

zero-tolerance policy, there must be a disputed issue of fact on whether the zero-tolerance

policy's reference to "sexual harassment"  included conduct less than that required for sexual

13

1   harassment by law.   There is no evidence before the court that the "sexual harassment" all

2   parties agree was included in the zero-tolerance policy included conduct less than that meeting

3   the legal definition of the law.   There is no evidence that Defendant, Glikey, or anyone else who

4   worked for Defendant ever defined the "sexual harassment" mentioned in the zero-tolerance

5   policy differently than the legal definition.   There is no evidence that Defendant, Glikey, or

6   anyone else who worked for Defendant did anything inconsistent with the legal definition of

7   "sexual harassment" to indicate that the zero-tolerance policy's definition was different from the

8   legal definition.   Plaintiff has cited no legal authority that would indicate a term like "sexual

9   harassment", which has a legal definition, should be given a different meaning absent evidence

10  that it meant something different in this particular context.   As such, the court finds that absent

11  evidence that the term "sexual harassment" had a different meaning as used in the zero-tolerance

12  policy, the default definition of the term "sexual harassment"  must be that found in the law.[1]

13  Thus, all evidence before the court is that Burgess's statement did not constitute sexual

14  harassment in violation of the zero-tolerance policy.

15       If Burgess's statement did not constitute sexual harassment in violation of the zero-

16  tolerance policy, than Plaintiff has provided no evidence of pretext to rebut Defendant's evidence

17  of a non-discriminatory motive for firing Plaintiff.   If Burgess is not included in the group of

18  people who violated the zero-tolerance policy, there is only evidence of two people who violated

19  the zero-tolerance policy.   The evidence before the court shows that only two people – Plaintiff

20  and Reeve – made harassing statements after Glikey announced the zero-tolerance policy and

21  their statements were reported to CCA and Glikey.    Plaintiff was treated the same as the other

22  officer who violated the zero-tolerance policy.   Given the standards for summary judgment, the

23  court finds that the undisputed facts show a non-discriminatory reason for Plaintiff's termination.

24   Plaintiff has not created a disputed issue of material fact as to whether Defendant's articulated

25

26       [1]  The court notes that Plaintiff has not asked for the opportunity to obtain discovery on
    whether Defendant meant something other than the legal definition when using the term "sexual
27  harassment" as part of the zero-tolerance policy.

1  reason was pretext for discrimination.    Thus, summary judgment on behalf of Defendant is

2  appropriate.

3  ***2.   Failure to Document Zero-Tolerance Policy***

4          Despite the fact that the parties all agree racially offensive comments and sexual

5  harassment were included in the zero-tolerance policy, Plaintiff contends that there is still

6  sufficient evidence of pretext to require a trier of fact to resolve whether Defendant's stated

7  reasons to terminate Plaintiff are true.

8          Plaintiff contends that Defendant's failure to produce written documentation of its own

9  policy shows pretext.   In a case in which the alleged legitimate reason for the Defendant's

10  conduct was a hiring freeze, the Ninth Circuit remarked as follows when the defendant could not

11  produce written documentation of the hiring freeze policy:

12          the absence of any documentation confirming that a company hiring freeze was in
            place during the relevant time period is sufficient to raise a genuine factual dispute
13          as to whether the asserted reason was pretextual. Indeed, even if such decisions
            were commonly conveyed to yard managers by word-of-mouth, the fact that a
14          company the size of GTE does not have a memorandum, meeting notes, or other
            evidence of this hiring freeze or the financial difficulties that allegedly spurred the
15          hiring freeze provides circumstantial evidence that the hiring freeze did not in fact
            exist.
16

17  McGinest v. GTE Service Corp., 360 F.3d 1103, 1123 (9th Cir. 2004).

18          The court finds McGinest's finding –  that pretext can be shown by the absence of any

19  documentation confirming the defendant's policy –  is distinguishable from the facts of this case.

20  Here, the parties have provided the court with depositions, declarations, and Minutes that state

21  the zero-tolerance policy.    Glikey's declaration, Plaintiff's second deposition, and the Minutes

22  all confirm the same zero-tolerance policy.   In this case, the parties all agree that the policy

23  included  sexual harassment, racial slurs, and providing false/untruthful statements.   Defendant's

24  failure to provide documentation to support the zero-tolerance policy is of minimal significance

25  in a case where all parties agree that the documentation ultimately provided by Plaintiff sets forth

26  the correct policy.   In addition, this case differs from McGinest because, at this time, the court

27

28                                               15

1   does have documentation to support Defendant's zero-tolerance policy.   Finally, the <u>McGinest</u>

2   court noted that there was additional circumstantial evidence of pretext in that case given the

3   defendant's "permissive response to harassing actions undertaken by coworkers and supervisors,

4   combined with the absence of black supervisors and managers in the workplace".   <u>McGinest</u>,

5   360 F.3d at 1123.   In this case, there is no additional circumstantial evidence of discrimination.

6   Thus, the court finds that Defendant's failure to produce its own Minutes from its own records

7   does not show pretext because all parties agree that the Minutes finally produced by Plaintiff

8   accurately reflect the zero-tolerance policy.

9   ***C.   Changed Reasons for Termination***

10          Plaintiff also contends that Defendant's changed positions show provides evidence of

11   pretext.   Plaintiff points out that in its original motion for summary judgment Defendant argued

12   only about Defendant's zero-tolerance policy on racial slurs.   Glikey's declaration only

13   addressed a zero-tolerance policy on racial slurs, and Glikey claimed Burgess was not fired

14   because her DSL comment was not a racial slur.   Plaintiff points out that Defendant now takes

15   the position that the zero-tolerance policy applied to sexual harassment, racial slurs, and

16   providing false/untruthful statements.   Plaintiff argues this change in Defendant's definition of

17   the zero-tolerance policy shows pretext.

18          It is well established that substantial changes over time in the employer's proffered reason

19   for its employment decision support a finding of pretext.   <u>Kobrin v. University of Minn.</u>, 34 F.3d

20   698, 703 (8th Cir. 1994).   When a defendant gives different and arguably inconsistent

21   explanations, a trier of fact may infer that the articulated reasons are pretextual.   <u>See</u>, <u>e.g.</u>

22   <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 432 (1st Cir. 2000);   <u>Thurman v. Yellow</u>

23   <u>Freight Sys.</u>, Inc., 90 F.3d 1160, 1167 (6th Cir. 1996); <u>Castleman v. Acme Boot Co.</u>, 959 F.2d

24   1417, 1422 (7th Cir. 1992); <u>Alvarado v. Board of Trustees</u>, 928 F.2d 118, 122-23 (4th Cir. 1991);

25   <u>Schmitz v. St. Regis Paper Co.</u>, 811 F.2d 131, 132-33 (2d Cir.1987).   "[I]n the ordinary case,

26   such fundamentally different justifications for an employer's action would give rise to a genuine

27

28                                                    16

1    issue of fact with respect to pretext since they suggest the possibility that neither of the official

2    reasons was the true reason."   Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993).

3            Unlike these cases, Defendant's stated reasons for terminating Plaintiff have not changed.

4     Defendant has always maintained that Plaintiff was fired because she violated Defendant's zero-

5    tolerance policy toward racial slurs.   Plaintiff has failed to offer evidence that Defendant

6    indicated to her, or anyone else, that Plaintiff was fired for something other than her violation of

7    the zero-tolerance policy.   Because Defendant has not "shifted" its reason for terminating

8    Plaintiff from one theory to another, Plaintiff cannot prove pretext by showing Defendant has

9    significantly changed its justification for firing Plaintiff.

10           The court does note that Defendant, or at least Defendant's attorneys, have "shifted" the

11   definition of the zero-tolerance policy over the course of this case.   In the original motion for

12   summary judgment, Defendant contended that the zero-tolerance policy applied to racial

13   comments.   Defendant supported this position by Glikey's First Declaration, which stated:

14   "During my tenure as Warden, I issued a zero tolerance policy regarding any racial comment by

15   any CCA employee."   See Glikey Dec. I at ¶ 3.   In the same Declaration, Glikey addressed the

16   comment by Burgess and stated that he had made the decision to only suspend Burgess because

17   he "did not consider the comment she made to be a racial comment."   See id. at ¶ 7.   The issue

18   of the zero-tolerance policy also applying to sexually harassing statements was not raised until

19   Plaintiff's opposition brief.   In support of her position that the zero-tolerance policy applied to

20   sexually harassing comments, Plaintiff provided her own declaration in which she stated Glikey's

21   zero-tolerance policy was with respect to all harassing and offensive comments in the workplace,

22   including sexual comments.   See Sanchez Dec. ¶ 3.   Defendant provided no additional evidence

23   with its reply brief,  such as another declaration from Glikey, a declaration from another

24   employee, or written records addressing Plaintiff's allegations that the zero-tolerance policy

25   included other conduct.   However, in the reply brief Defendant countered some of Plaintiff's

26   evidence of other harassing comments by arguing that the zero-tolerance policy applied only to

27

28                                                  17

1   racial statements.   In denying summary judgment, the court found that there was a disputed

2   issue of fact on whether the zero-tolerance policy applied only to racial statements, as Defendant

3   alleged, or whether it also included sexually offensive statements, as Plaintiff had alleged.   In

4   this motion for reconsideration, Defendant now takes the position that the zero-tolerance policy

5   applied to sexual harassment, racial slurs, and providing false/untruthful statements.

6        Defendant has not explained why it argued in its reply brief that the zero-tolerance policy

7   applied **only** to racial comments but now argues the zero-tolerance policy applies to sexual

8   harassment, racial slurs, and providing false/untruthful statements.   It remains unclear if

9   Defendant actually did not understand its own policy, Defendant's lawyers did not understand the

10  policy, or Defendant and/or Defendant's lawyers were purposely trying to mislead this court.

11  However, any inconsistency is not sufficient to provide evidence of pretext as to avoid summary

12  judgment.

13       In the original motion for summary judgment, Defendant and Glikey addressed the zero-

14  tolerance policy towards racial comments or slurs.   The fact the supporting points and

15  authorities, proposed undisputed facts, and Glikey's declaration only addressed the zero-

16  tolerance policy on racial comments appears to have been related to strategy.   Given Defendant's

17  position is that Plaintiff was terminated for violating the zero-tolerance policy on racial

18  comments, it was not unreasonable for Defendant to not include additional evidence and

19  discussion on what other conduct was also included in the zero-tolerance policy.   However,

20  once Plaintiff took the position that other conduct was included in the zero-tolerance policy, the

21  court is troubled by Defendant's references to the confines of the zero-tolerance policy in the

22  reply brief.

23       In their reply brief, Defendant never directly addressed Plaintiff's contentions that the

24  zero-tolerance policy included sexually harassing statements.   However, in several places,

25  Defendant took the position that the zero-tolerance policy was limited to racial comments or

26  slurs.   On Page Three of the reply brief, Defendant stated "Warden Glikey submitted a

27

28                                                    18

1  declaration stating that the zero-tolerance policy applied to racial comments . . . ."   On Page

2  Four, Defendant addressed Plaintiff's evidence concerning Burgess, and argued that "Burgess

3  was suspended because her sexual comment did not fall under the zero tolerance policy, which

4  was directed at racial comments."    On Page Fourteen, Defendant argued that Plaintiff "fails to

5  realize that other employees were not similarly situated [to Plaintiff] because they did not make

6  any racial derogatory comments."   These statements, found  in the reply brief, are different than

7  Defendant's current position.

8       However, the court does not find Defendant's inconsistency sufficient evidence to create

9  a disputed issue of fact on pretext.   While the reply brief described the zero-tolerance policy as

10  applying only to racial statements, neither Glikey's declaration nor the evidence provided for by

11  Defendant stated the zero-tolerance policy was so limited.   The court finds that Glikey's

12  declarations are simply not inconsistent.   Nowhere in the first declaration does Glikey state the

13  policy only applied to racial comments, and Glikey's decision to focus on the policy as to racial

14  comments was reasonable given Defendant's stated reason to fire Plaintiff was based on racial

15  comments that violated the policy.   At the time it was made, Glikey's declaration focused on the

16  relevant issue before the court.   Even Glikey's second declaration focuses on the relevant issues

17  before the court.   For example, Glikey's second declaration does not discuss whether he

18  considered Burgess's comment to be a false/untruthful statement.   The court presumes Glikey

19  did not add this detail because the portions of the zero-tolerance policy currently at issue are

20  sexual harassment and racial slurs.   Simply put, while the position taken by Defendant's

21  attorney, albeit on Defendant's behalf,  in the reply brief is contrary to that taken in the pending

22  motion, Defendant itself has never provided evidence that the policy was limited to racial

23  comments or slurs.

24       In addition, the court's reliance on Defendant's assertions in the reply brief – that the

25  zero-tolerance policy only applied to racial statements – did not assist Defendant on the prior

26  motion.   To the contrary, the court found that there was a disputed issue of fact on the scope of

27

28                    19

the zero-tolerance policy, and denied Defendant's motion.   This is not the case where the court relied on Defendant's prior inconsistent position to defeat Plaintiff's motion for summary judgment.

Finally, as discussed above, Plaintiff does not disagree with the zero-tolerance policy now advocated by Defendant.   Plaintiff herself has modified her definition of the zero-tolerance policy by stating that her understanding of the sexually offensive comments included in the policy really meant sexual harassment.   All parties now  agree that the zero-tolerance policy applied to sexual harassment, racial slurs, and providing false/untruthful statements.   Because all parties agree on the zero-tolerance policy, this case differs from those in which the defendant is continually making up new reasons for termination, all of which the Plaintiff disputes.   Here, Plaintiff and Defendant are currently in agreement as to the policy.   Thus, the court does not find that the evidence of Defendant's differing positions on the confines of the zero-tolerance policy, alone, is sufficient evidence to establish pretext.

**CONCLUSION AND ORDER**

The parties agree that the newly discovered evidence accurately reflects Defendant's zero-tolerance policy.   As such, the zero-tolerance policy is currently undisputed, and no trial on what the zero-tolerance policy included is necessary.   Under the zero-tolerance policy, all evidence before the court shows that Plaintiff was treated the same as other employees who violated the policy.   Thus, there is insufficient evidence of pretext, and Defendant is entitled to summary judgment.  Accordingly, based on the above memorandum opinion, the court ORDERS that:

1.      Defendant's motion for reconsideration is GRANTED;

2.      Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

**Dated:   May 8, 2007**                    _____/s/ Anthony W. Ishii_____
                                                         UNITED STATES DISTRICT JUDGE

20